**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
STEVE HOSKINS,

                      Plaintiff,              Civil Action No.

       -against-

SHIELD PROTECTIVE GROUP INC.,
JONATHAN JACKSON,
AZALEA ROSARIO-JACKSON, and
ROB JACKSON,

                      Defendants.
------------------------------------------------------------------------X

## <u>COMPLAINT</u>

      The Plaintiff, STEVE HOSKINS (hereinafter "Plaintiff"), as and for his Complaint against the Defendants, SHIELD PROTECTIVE GROUP INC., JONATHAN JACKSON, AZALEA ROSARIO-JACKSON, and ROB JACKSON (hereinafter collectively "Defendants"), respectfully alleges as follows:

## <u>JURISDICTION AND VENUE</u>

      1.    Plaintiff brings this action under the Fair Labor Standards Act (hereinafter the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, and Articles 6 and 19 of the New York Labor Law (hereinafter the "NYLL"), and the supporting New York State Department of Labor Regulations of the Official Compilation of Codes, Rules, and Regulations of the State of New York promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act including Parts 142 and 146 of Title 12 (hereinafter "Regulations"), to recover unpaid overtime compensation, unpaid wages, statutory penalties for wage notice and wage statement violations, damages for retaliation, and for other relief.

2.      Jurisdiction over Plaintiff's FLSA claims is based upon Section 216(b) of the FLSA, 29 U.S.C. § 216(b), and upon 28 U.S.C. § 1331.

3.      The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) because these claims are so related to the FLSA claims that they form part of the same case or controversy.

4.      Venue is appropriate in the Western District of New York pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial District.

## **PARTIES**

5.      Plaintiff STEVE HOSKINS is an adult individual who is a resident of Buffalo, New York.

6.      Plaintiff was employed by Defendants as a non-managerial operations manager from on or about September 26, 2023 through on or about June 3, 2024.

7.      Plaintiff is a covered employee within the meaning of the FLSA and the NYLL.

8.      Defendant SHIELD PROTECTIVE GROUP INC. (hereinafter the "Company" or "Defendant Shield Protective") is a domestic business corporation duly organized and existing under and by virtue of the laws of the State of New York.

9.      Upon information and belief, Defendant Shield Protective maintains its principal place of business at 501 John James Audubon Parkway, Suite 107, Amherst, New York 14228.

10.     Defendant Shield Protective provides security guard services in the Western District of New York and elsewhere.

11.     Upon information and belief, Defendant Shield Protective's annual gross volume of business is not less than $500,000.00.

2

12.     At all relevant times, Defendant Shield Protective maintained control, oversight, and direction over Plaintiff, including but not limited to hiring, firing, scheduling, controlling work assignments, providing equipment, determining pay rates, maintaining timekeeping records, and controlling other employment practices applied to Plaintiff.

13.     Defendant Shield Protective is a covered employer within the meaning of the FLSA and the NYLL.

14.     Defendant JONATHAN JACKSON (hereinafter "Defendant Jackson") is an individual who, upon information and belief, is a resident of the State of New York.

15.     Upon information and belief, at all relevant times, Defendant Jackson was and still is an owner, Chief Executive Officer, corporate officer, director, and/or managing agent of Defendant Shield Protective.

16.     Upon information and belief, at all relevant times, Defendant Jackson has exercised operational control over Shield Protective, has controlled significant business functions of Shield Protective, has determined employee salaries and pay rates, has made hiring and firing decisions, has controlled employee schedules, and has acted on behalf of and in the interest of Shield Protective in devising, directing, implementing, and supervising the wage and hour practices and policies relating to their employees, including Plaintiff.

17.     At all relevant times, Defendant Jackson has participated in running the daily operations of Shield Protective.

18.     At all relevant times, Defendant Jackson has participated in the management and supervision of Plaintiff and his work for Shield Protective.

19.     At all relevant times, Defendant Jackson maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll, and other payroll practices applied to him.

3

20.    As such, at all relevant times, Defendant Jackson has been an employer under the FLSA and the NYLL.

21.    Defendant AZALEA ROSARIO-JACKSON (hereinafter "Defendant Rosario-Jackson") is an individual who, upon information and belief, is a resident of the State of New York.

22.    Upon information and belief, at all relevant times, Defendant Rosario-Jackson was and still is the Chief Operating Officer, an owner, corporate officer, director, and/or managing agent of Defendant Shield Protective.

23.    Upon information and belief, at all relevant times, Defendant Rosario-Jackson has exercised operational control over Shield Protective, has controlled significant business functions of Shield Protective, has determined employee salaries and pay rates, has made hiring and firing decisions, has controlled employee schedules, and has acted on behalf of and in the interest of Shield Protective in devising, directing, implementing, and supervising the wage and hour practices and policies relating to their employees, including Plaintiff.

24.    At all relevant times, Defendant Rosario-Jackson has participated in running the daily operations of Shield Protective.

25.    At all relevant times, Defendant Rosario-Jackson has participated in the management and supervision of Plaintiff and his work for Shield Protective.

26.    At all relevant times, Defendant Rosario-Jackson maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll, and other payroll practices applied to him.

27.    As such, at all relevant times, Defendant Rosario-Jackson has been an employer under the FLSA and the NYLL.

28.     Defendant ROB JACKSON (hereinafter "Defendant R. Jackson") is an individual who, upon information and belief, is a resident of the State of New York.

29.     Upon information and belief, at all relevant times, Defendant R. Jackson was and still is an owner, corporate officer, director, and/or managing agent of Defendant Shield Protective.

30.     Upon information and belief, Defendant R. Jackson is the father of Defendant Jonathan Jackson.

31.     Upon information and belief, at all relevant times, Defendant R. Jackson has exercised operational control over Shield Protective, has controlled significant business functions of Shield Protective, has determined employee salaries and pay rates, and has acted on behalf of and in the interest of Shield Protective in devising, directing, implementing, and supervising the wage and hour practices and policies relating to their employees, including Plaintiff.

32.     At all relevant times, Defendant R. Jackson has participated in running the daily operations of Shield Protective.

33.     At all relevant times, Defendant R. Jackson has participated in the management and supervision of Plaintiff and his work for Shield Protective.

34.     At all relevant times, Defendant R. Jackson maintained control, oversight, and direction over Plaintiff, including communicating changes to pay rates and other payroll practices applied to him.

35.     As such, at all relevant times, Defendant R. Jackson has been an employer under the FLSA and the NYLL.

36.     At all relevant times, Defendants had substantial control over Plaintiff's working conditions and over the unlawful policies and practices applied to him.

37.     Defendants are covered employers within the meaning of the FLSA and the NYLL.

## FACTS

**Employment and Duties:**

38.     On or about September 26, 2023, Plaintiff was hired by Defendants to work as an "Operations Manager" at Defendants' security guard services business.

39.     From on or about September 26, 2023, through on or about June 3, 2024, Plaintiff worked as a non-managerial operations manager for the benefit of and at the direction of Defendants.

40.     Throughout his employment, Plaintiff worked at Defendants' business location at 501 John James Audubon Parkway, Suite 107, Amherst, New York 14228, and at various client sites where Defendants provided security guard services.

41.     Defendant Jonathan Jackson hired Plaintiff.

42.     Defendants determined or participated in determining Plaintiff's rates of pay during his employment.

43.     Defendants decided or participated in deciding the manner in which Plaintiff would be paid during his employment.

44.     Defendants set Plaintiff's work schedule.

45.     At all relevant times, Defendants determined the number of days and hours that Plaintiff worked each week.

46.     At all relevant times, Defendants decided what job duties Plaintiff performed on a daily basis.

47.     At all relevant times, Defendants were responsible for the daily supervision of Plaintiff and his job duties.

48.     Plaintiff's primary responsibilities included finding new technology for the company with Defendants' direction and approval, handling administrative paperwork with strict

instructions from Defendants, and supervising employees only to the extent that he monitored whether they were on time and doing their jobs.

49. Plaintiff did not have authority to hire or fire staff. While he was present for interviews, he would share his opinion on the candidate, however, he did not have the authority to decide either way and his opinion did not carry any particular weight.

50. Plaintiff did not set pay or schedules; he merely input the schedules set by Defendants into the Company's Connecteam app.

51. Plaintiff did not have the authority to discipline employees and would instead report any issues that arose to the district manager.

52. During his employment with Defendants, Plaintiff never had any true managerial duties despite his title.

53. Plaintiff had no control or influence over personnel decisions. He could not hire, discipline, or fire other employees, nor did he have any say in these decisions.

54. Plaintiff had no control or influence over the pay or schedule of other employees.

55. Plaintiff also had no control, authority, or influence related to Defendants' business finances or operations in any meaningful way such that any other exemption might apply.

56. At all relevant times, Defendants maintained total control over Plaintiff's work, including:

    a. Determining Plaintiff's rates of pay;

    b. Setting Plaintiff's work schedule and hours;

    c. Controlling Plaintiff's work assignments;

    d. Providing equipment and technology for Plaintiff to use;

e.  Maintaining a timekeeping system and requiring Plaintiff to punch in and out using Defendants' Connecteam app;

f.   Controlling all aspects of how Plaintiff performed his work; and

g.  Exercising operational control over all significant business functions.

57.    At no point during his employment did Plaintiff perform any jobs or exercise any duties that would classify him as exempt from overtime under the FLSA or the NYLL or qualify him as an independent contractor.

58.    Throughout his employment, Plaintiff was undeniably an employee and Defendants were undeniably employers.

**Wage Violations:**

59.    From on or about September 26, 2023 through on or about June 3, 2024, Plaintiff worked for Defendants as a non-exempt, hourly employee.

60.    From the outset of his employment through on or about November 19, 2024, Plaintiff typically worked well over forty (40) hours each week, often working approximately sixty (60) to eighty (80) hours in a week for the benefit of and at the direction of Defendants.

61.    During this initial period, Defendants paid Plaintiff at an hourly rate of $24.00 per hour.

62.    During this initial period, Defendants properly paid Plaintiff time and one-half his regular hourly rate for all hours worked over forty (40) in a workweek, at an overtime rate of $36.00 per hour.

63.    During this initial period, Defendants paid Plaintiff as a W-2 employee with proper payroll deductions.

64.    On or about November 20, 2023, without explanation, Defendants unlawfully began paying Plaintiff at a straight time rate for the hours he worked over forty (40) each week.

65.    Despite this change in pay, Plaintiff continued to be scheduled for and did actually work between sixty (60) and eighty (80) hours each week.

66.    On or about January 17, 2024, Defendants arbitrarily and unilaterally reduced Plaintiff's hourly rate from $24.00 per hour to $21.50 per hour.

67.    Defendants stated the reason for the reduction was that "the company was bleeding profusely."

68.    Also at this time, Defendants began paying Plaintiff via 1099 as an independent contractor despite the fact that nothing about Plaintiff's duties or responsibilities had changed – he was and continued to be an employee.

69.    Along with the pay reduction and sudden fraudulent misclassification of Plaintiff as an independent contractor, Defendants unlawfully commenced paying Plaintiff only straight time for each hour he worked over forty (40) in a workweek.

70.    Thereafter and through the end of Plaintiff's employment, Defendants compensated Plaintiff for all hours he worked as an independent contractor without Plaintiff's consent and without explaining to Plaintiff the implications or tax consequences of same.

71.    Defendant Rob Jackson communicated the pay rate reduction to Plaintiff.

72.    Defendants did not provide Plaintiff with any written wage notice regarding the pay rate reduction from $24.00 per hour to $21.50 per hour.

73.    Around this same time or shortly thereafter, Defendant Rob Jackson communicated to Plaintiff that the Company would pay Plaintiff less than his hourly rate for the hours he worked over forty (40) in a workweek.

74.    Specifically, Defendant Rob Jackson advised Plaintiff that his "overtime" pay would be reduced to $18.00 per hour.

75.    In or about February 2024, Defendants began paying Plaintiff for any hours he worked over forty (40) in a week at the unlawful rate of $18.00 per hour. Thereafter and through the end of his employment, Plaintiff was compensated at a rate of $21.50 per hour for his first forty (40) hours of work each week and at a rate of $18 per hour for any hours worked beyond forty (40) each week.

76.    Throughout this period, Plaintiff continued to work sixty (60) to eighty (80) hours each week for the benefit of and at the direction of Defendants.

77.    Also at this time, Defendants engaged in an unlawful scheme of telling other employees that if they wanted to work overtime hours they could but that any hours worked over forty (40) in a week would be compensated separately on a Form 1099 and paid at a straight time rate.

78.    Throughout his employment, Plaintiff had a set schedule and was required to punch in and out of work each day using Defendants' Connecteam timekeeping app.

79.    For example, during the workweek of May 27, 2024 through June 2, 2024, Plaintiff worked a total of 72 hours and 15 minutes as reflected in Defendants' Connecteam timekeeping records.

80.    From in or about November 2023 through on or about June 3, 2024, Defendants consistently failed to pay Plaintiff the statutorily required overtime premium of time and one-half his regular hourly rate for hours worked beyond forty (40) in a workweek.

81.    From in or about February 2024 through on or about June 3, 2024, Defendants consistently failed to pay Plaintiff at or above even his regular rate of pay for all hours worked.

82.    Throughout the period from in or about November 2023 through on or about June 3, 2024, Plaintiff consistently worked an average of approximately 32.5 overtime hours weekly for which he was not paid the statutorily required overtime premium.

83.    For approximately eight (8) months, Defendants took advantage of Plaintiff's hard work and dedication by paying him only straight time or below his straight time rate, regardless of the number of hours he worked each week.

84.    Defendants' failures to pay proper wages have been made without good faith, willfully, and with a reckless disregard for Plaintiff's rights, and Plaintiff has been damaged by such failures.

85.    Throughout the relevant period, Defendants knew or should have known that their failure to pay Plaintiff his proper overtime wages violated the FLSA and NYLL.

86.    Throughout the relevant period, Defendants knew or should have known that their misclassification of Plaintiff's as an independent contractor violated the FLSA and NYLL.

87.    Defendants' violations of the FLSA and NYLL have been willful, deliberate, and intentional, and not the result of any good faith belief that their conduct was in compliance with the law.

88.    Following Plaintiff's termination on June 3, 2024, Defendants failed to pay Plaintiff for his final 72.15 hours of work for the workweek of May 27, 2024 through June 2, 2024.

89.    From November 2023 through the end of his employment, Defendants issued paystubs to Plaintiff that failed to accurately reflect his hours worked, his rates of pay, and his overtime compensation.

90.    Accordingly, Defendants failed to provide Plaintiff with proper wage statements as required by NYLL § 195(3).

91.     Defendants did not provide Plaintiff with a wage notice at his time of hire.

92.     Defendants did not provide Plaintiff with a wage notice when they reduced his hourly rate from $24.00 per hour to $21.50 per hour on or about January 17, 2024.

93.     Defendants did not provide Plaintiff with a wage notice when they reduced his overtime rate to $18.00 per hour in or about February 2024.

94.     Accordingly, Defendants failed to provide Plaintiff with proper wage notices as required by NYLL § 195(1).

95.     Throughout the relevant period, Defendants knew or should have known that their failure to provide proper wage notices and statements violated the NYLL.

**Retaliation:**

96.     Plaintiff made several complaints to Defendants regarding his improperly paid wages.

97.     In response to Plaintiff's wage complaints, Defendants would provide various excuses, including alleging that Plaintiff's pay was dependent upon a client's billing rate, which was false.

98.     In response to Plaintiff's very first wage complaint, District Manager Shawn McPhail told Plaintiff he was "penny pinching" and instead should be focused on "longevity" with the Company.

99.     District Manager Shawn McPhail went on to threaten Plaintiff stating that if he continued to "penny pinch" he might find "[himself] walking out the door."

100.    On May 30, 2024, Plaintiff made a protected complaint via a Company-wide group text message.

101.    In the May 30, 2024 group text message, Plaintiff stated that he wanted to address an important issue, that not being paid for all his hours at the correct rate reflected a lack of appreciation for his work, that he had shown his dedication through countless unpaid hours and meetings, that despite repeatedly informing management about errors in his pay his concerns were dismissed, and that when he worked over forty (40) hours and was paid at a lower rate of $18.00 it spoke volumes about how his efforts were valued.

102.    In the May 30, 2024 group text message, Plaintiff complained to Defendants that the Company was "breaking the law" through their improper payment practices.

103.    Defendant Rosario-Jackson responded to Plaintiff's May 30, 2024 protected complaint by calling Plaintiff's tone "degrading and demeaning."

104.    Defendant Rosario-Jackson stated that while she understood Plaintiff may be frustrated, his complaint in the group chat would "absolutely not be tolerated."

105.    Three days later, on June 3, 2024, upon his arrival at work, Plaintiff was handed a termination letter signed by Defendant Rosario-Jackson.

106.    The termination letter stated that Plaintiff's employment was terminated due to "poor attendance, lack of job performance, oral defamation against the company, and timesheet fraud."

107.    Plaintiff was an exemplary employee and had never received a single warning or write-up regarding any such alleged infractions prior to his termination.

108.    The allegations in the termination letter were false and pretextual.

109.    The termination letter alleged that Plaintiff arrived late to his scheduled shift on May 30, 2024, and changed his arrival time in the Connecteam timekeeping app, resulting in "timesheet fraud."

110.    The allegations regarding Plaintiff's May 30, 2024 timesheet are false.

111.    The termination letter alleged that on June 2, 2024, Plaintiff "continued to slander the company" and spread "false information to all Shield employees."

112.    Each of the listed infractions in the termination letter allegedly occurred after Plaintiff made his protected complaint on May 30, 2024.

113.    The close temporal proximity between Plaintiff's protected complaint on May 30, 2024 and his termination on June 3, 2024 establishes a direct causal link between the protected activity and the adverse employment action.

114.    Plaintiff was wrongfully terminated in retaliation for making his protected wage complaint.

115.    As the result of Defendants' unlawful conduct, Plaintiff was left unemployed and suffered substantial financial loss and significant emotional distress.

116.    Defendants' retaliatory termination of Plaintiff was willful, deliberate, and intentional.

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### 29 U.S.C. § 201 *ET SEQ.*
### FAILURE TO PAY OVERTIME WAGES

117.    Plaintiff alleges, re-alleges, and incorporates by reference all allegations set forth in each of the preceding paragraphs as though fully set forth herein.

118.    At all times relevant to this Complaint, each of the Defendants have been and continue to be an "employer" within the meaning of the FLSA (29 U.S.C. § 207(a)(2)).

119.    At all times relevant to this Complaint, Defendants "employed" Plaintiff by suffering or permitting him to work within the meaning of the FLSA (29 U.S.C. § 203(g)).

120.    The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or are employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).

121.    At all times relevant to this Complaint, Defendants had more than two (2) employees employed in an enterprise engaged in commerce.

122.    At all times relevant to this Complaint, Defendant Shield Protective was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA (29 U.S.C. § 203(s)). As such, Defendant Shield Protective was and is subject to the overtime pay requirements of the FLSA.

123.    Upon information and belief, the gross annual volume of business done by Defendant Shield Protective for the relevant time period was not less than $500,000.00.

124.    At all times relevant to this action, Plaintiff was entitled to the rights, benefits, and protections granted by the FLSA, 29 U.S.C. §§ 207, *et seq*.

125.    Section 207(a)(1) of the FLSA states that an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week.

126.    By the above-alleged conduct, Defendants have violated the FLSA by failing to pay Plaintiff overtime compensation for all hours worked in excess of forty (40) per week as required by the FLSA.

127.    Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from the overtime compensation requirements set forth in Section 207(a)(1) of the FLSA.

128.    However, none of the Section 13 exemptions apply to Plaintiff because he has not met the requirements for coverage under the exemptions.

129.    Defendants have acted willfully and have either known that their conduct violated the FLSA or have shown reckless disregard for the matter of whether their conduct violated the FLSA.

130.    Defendants have not acted in good faith with respect to the conduct alleged herein.

## COUNT II
## VIOLATION OF ARTICLES 6 AND 19 OF THE NEW YORK LABOR LAW
## FAILURE TO PAY OVERTIME WAGES

131.    Plaintiff alleges, re-alleges, and incorporates by reference all allegations set forth in each of the preceding paragraphs as though fully set forth herein.

132.    At all times relevant to this Complaint, Defendants were "employers" of Plaintiff within the meaning of the NYLL and the supporting Regulations pertaining thereto.

133.    At all times relevant to this Complaint, Plaintiff was an "employee" of Defendants within the meaning of the NYLL and the supporting Regulations pertaining thereto.

134.    At all times relevant to this Complaint, Defendants employed Plaintiff, suffering or permitting him to work within the meaning of the NYLL and the supporting Regulations pertaining thereto.

135.    At all times relevant to this Complaint, Plaintiff was employed by Defendants within the meaning of NYLL §§ 2 and 651.

136.    The overtime wage provisions of Article 19 of the NYLL and its supporting New York State Department of Labor Regulations apply to Defendants and protect Plaintiff.

137.    Under New York law, an employee must be paid overtime, equal to one and one-half times the employee's regular rate of pay for all hours worked in excess of forty (40) per workweek. 12 N.Y.C.R.R. § 146-1.4.

138.    By the above-alleged conduct, Defendants failed to pay Plaintiff overtime compensation for all hours that he worked in excess of forty (40) hours each workweek for Defendants.

139.    By the above-alleged conduct, Defendants failed to pay Plaintiff overtime compensation as required by the NYLL and the Regulations pertaining thereto.

140.    Plaintiff is not exempt from the overtime provisions of the NYLL and the Regulations pertaining thereto because he has not met the requirements for any of the reduced number of exemptions available under New York law.

141.    At all times relevant to this Complaint, Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff.

142.    Defendants have acted willfully and have either known that their conduct violated the NYLL and the Regulations pertaining thereto or have shown a reckless disregard for the matter of whether their conduct violated the NYLL and the Regulations pertaining thereto. Defendants have not acted in good faith with respect to the conduct alleged herein.

143.    Through their knowing and intentional failure to pay Plaintiff overtime wages for all hours worked in excess of forty (40) hours each workweek, Defendants willfully violated Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

**COUNT III**
**VIOLATION OF THE NEW YORK LABOR LAW**
**NYLL SECTION 195(1)**
**<u>FAILURE TO PROVIDE WAGE NOTICES</u>**

144. Plaintiff alleges, re-alleges, and incorporates by reference all allegations set forth in each of the preceding paragraphs as though fully set forth herein.

145. NYLL § 195(1) requires employers to provide employees with a written notice at the time of hiring containing, among other things, the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the Commissioner deems material and necessary.

146. NYLL § 195(1) also requires employers to provide employees with a new written wage notice whenever any of the information required to be provided changes, unless such information is already included in the employee's wage statement.

147. Defendants willfully failed to furnish Plaintiff with a wage notice at the time of his hiring on or about September 26, 2023, as required by NYLL § 195(1), in English or in the language identified by Plaintiff as his primary language.

148. Defendants willfully failed to provide Plaintiff with a new written wage notice prior to reducing his regular hourly rate from $24.00 per hour to $21.50 per hour, as required by NYLL § 195(1).

149. Defendants willfully failed to provide Plaintiff with a new written wage notice prior to changing his overtime compensation method in or about February 2024, as required by NYLL § 195(1).

150.    Through their knowing and intentional failure to provide Plaintiff with the wage notices required by the NYLL, Defendants have willfully violated NYLL §§ 190 *et seq.* and the supporting Regulations.

**COUNT IV**
**VIOLATION OF THE NEW YORK LABOR LAW**
**NYLL SECTION 195(3)**
**FAILURE TO PROVIDE WAGE STATEMENTS**

151.    Plaintiff alleges, re-alleges, and incorporates by reference all allegations set forth in each of the preceding paragraphs as though fully set forth herein.

152.    NYLL § 195(3) requires employers to provide employees with a statement with every payment of wages, listing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

153.    For non-exempt employees, the wage statement must also include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked.

154.    Throughout the period of in or about November 2023 through on or about June 3, 2024, Defendants willfully failed to provide Plaintiff with accurate wage statements as required by NYLL § 195(3).

155.    Through their knowing and intentional failure to provide Plaintiff with accurate wage statements required by the NYLL, Defendants have willfully violated NYLL §§ 190 *et seq.* and the supporting Regulations.

**COUNT V**
**VIOLATION OF THE FLSA**
**29 U.S.C. § 201 *ET SEQ.***
**RETALIATION FOR PROTECTED COMPLAINTS**

156.    Plaintiff alleges, re-alleges, and incorporates by reference all allegations set forth in each of the preceding paragraphs as though fully set forth herein.

157.    Defendants retaliated against Plaintiff in violation of his rights secured by the FLSA for making protected complaints alleging unlawful pay practices in violation of the FLSA.

158.    Plaintiff engaged in activity protected by the FLSA, 29 U.S.C. § 215(a)(3), when he made internal complaints to management about Defendants' failure to pay him lawful overtime wages.

159.    Plaintiff engaged in activity protected by the FLSA, 29 U.S.C. § 215(a)(3), when he made his complaint via Company-wide group text message on May 30, 2024, stating that Defendants were "breaking the law" through their improper payment practices.

160.    Defendants subjected Plaintiff to an adverse employment action when they terminated his employment on June 3, 2024.

161.    A causal connection exists between Plaintiff's protected activity and his termination, evidenced by the extremely close temporal proximity of three (3) days between his final complaint on May 30, 2024 and his termination on June 3, 2024.

162.    A causal connection exists between Plaintiff's protected activity and his termination, evidenced by the pretextual nature of the reasons given for his termination.

163.    Plaintiff was an exemplary employee who had never received a single warning or write-up prior to his termination, yet was terminated three days after making his protected complaint based on alleged infractions that purportedly occurred after his complaint.

164.    The allegations in the termination letter are false and were fabricated as a pretext to justify Plaintiff's unlawful termination in retaliation for his protected complaints.

165.    Plaintiff was terminated due to his protected actions.

166.    Plaintiff suffered severe emotional distress as a result of the termination.

167.    Plaintiff suffered significant economic loss as a result of the termination.

168.    Defendants' actions were willful and malicious.

169.    Defendants engaged in retaliation with malice and with reckless indifference to the right of Plaintiff to be free from such illegal actions.

170.    Defendants retaliated in the face of the perceived risk that their actions violated federal law.

**COUNT VI**
**VIOLATION OF THE NEW YORK LABOR LAW**
**NYLL SECTION 215**
**RETALIATION FOR PROTECTED COMPLAINTS**

171.    Plaintiff alleges, re-alleges, and incorporates by reference all allegations set forth in each of the preceding paragraphs as though fully set forth herein.

172.    Defendants retaliated against Plaintiff in violation of his rights secured by NYLL § 215 when they terminated his employment in retaliation for his protected complaints regarding Defendants' violations of the New York Labor Law.

173.    Plaintiff engaged in activity protected by NYLL § 215 when he made internal complaints to management about Defendants' failure to pay him lawful overtime wages as required by the New York Labor Law.

174.    Plaintiff engaged in activity protected by NYLL § 215 when he made his complaint via Company-wide group text message on May 30, 2024, stating that Defendants were "breaking the law" through their improper payment practices in violation of the New York Labor Law.

175.    Defendants subjected Plaintiff to an adverse employment action when they terminated his employment on June 3, 2024.

176.    A causal connection exists between Plaintiff's protected activity and his termination, evidenced by the extremely close temporal proximity of three (3) days between his final complaint on May 30, 2024 and his termination on June 3, 2024.

177.    Plaintiff was terminated due to his protected actions.

178.    Plaintiff suffered severe emotional distress as a result of the termination.

179.    Plaintiff suffered significant economic loss as a result of the termination.

180.    Defendants' actions were willful and malicious.

181.    Defendants engaged in retaliation with malice and with reckless indifference to the right of Plaintiff to be free from such illegal actions.

182.    Defendants retaliated in the face of the perceived risk that their actions violated New York law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, by and through his attorneys, demands judgment against Defendants, jointly and severally, and in favor of Plaintiff, for a sum that will properly, adequately, and completely compensate Plaintiff for the nature, extent, and duration of the damages, costs of this action, and as follows:

A.    Declare and find that Defendants committed one or more of the following acts:

1.    Violated provisions of the FLSA by failing to pay overtime compensation to Plaintiff;

2.  Willfully violated the overtime provisions of the FLSA;

3.  Violated the provisions of the NYLL by failing to pay overtime compensation to Plaintiff;

4.  Willfully violated the applicable provisions of the NYLL;

5.  Violated the provisions of the FLSA by retaliating against Plaintiff following his protected complaints;

6.  Violated the provisions of the NYLL by retaliating against Plaintiff following his protected complaints;

7.  Violated the provisions of the NYLL by failing to provide Plaintiff with wage notices as required by NYLL § 195(1); and,

B.  Violated the provisions of the NYLL by failing to provide Plaintiff with wage statements as required by NYLL § 195(3);

B.  Award compensatory damages, including all overtime compensation owed, in an amount according to proof;

C.  Award back pay, front pay, prejudgment interest, lost fringe benefits, compensatory damages, including emotional distress damages and punitive damages resulting from retaliation;

D.  Award liquidated damages under the NYLL, or alternatively the FLSA;

E.  Award statutory penalties under NYLL for wage notice and wage statement violations;

F.  Award damages for retaliation under the FLSA and NYLL;

G.  Award interest as applicable on all overtime compensation from the date such amounts were due;

H.  Award all costs and attorneys' fees incurred in prosecuting this action; and,

I.  Award such other and further relief as this Court deems just and proper.

Dated: December 3, 2025
Albany, New York

**HARDING MAZZOTTI, LLP**

BY: *Kelly A. Magnuson*

Kelly A. Magnuson, Esq.
*Attorneys for Plaintiff*
1 Wall Street
Albany, New York 12205
Tel.: (518) 556-3402
Email: Kelly.Magnuson@1800law1010.com

TO:    SHIELD PROTECTIVE GROUP INC.
501 John James Audubon Parkway, Suite 107
Amherst, New York 14228

JONATHAN JACKSON
501 John James Audubon Parkway, Suite 107
Amherst, New York 14228

AZALEA ROSARIO-JACKSON
501 John James Audubon Parkway, Suite 107
Amherst, New York 14228

ROB JACKSON
501 John James Audubon Parkway, Suite 107
Amherst, New York 14228